THE COCKERILL ZINC COMPANY V. CALVIN STREETS.

No. 15,928.   (101 Pac. 475.)

SYLLABUS BY THE COURT.

PERSONAL INJURIES—*Assumption of Risk—Contributory Negligence—Instructions—Special Findings.* The errors assigned are that the court gave improper instructions, refused to give proper instructions that were requested, and denied a request to require the jury to return a more definite answer to a question submitted. The record is examined, and it is held that no error appears in the rulings complained of.

Error from Wilson district court; JAMES W. FINLEY, judge. Opinion filed April 10, 1909. Affirmed.

*Altes H. Campbell,* and *John F. Goshorn,* for plaintiff in error.

*T. J. Hudson,* and *D. J. Sheedy,* for defendant in error.

The opinion of the court was delivered by

BENSON, J.: This is an action for damages for personal injuries suffered through the alleged negligence of the defendant. The plaintiff, Calvin Streets, recovered, and the principal errors complained of relate to the instructions given and refused.

The plaintiff was a laborer in the defendant's employ, and when injured was at work in the "mix room" of a smelter. A screw conveyor about ten feet in length and ten inches in diameter, enclosed in a box, operated just below the floor of this room. About eight feet in length of this box was covered with a metal grating, through which the ore, when mixed and thrown upon it, descended into the conveyor and was carried to a receptacle from which it was elevated to the room above. About two feet in length of this box at the end where the ore was discharged was covered with solid sheet metal. At the time of the injury the plaintiff was engaged in shoveling ore upon the grating. The ore

was hot, and was moistened with water from a pipe leading to the conveyor. The faucet was above the solid lid, and on the opposite side from where the plaintiff was at work. When the charge became too wet another workman, stationed at the point where it was delivered from the conveyor, would call out, "Water off," and it then became the duty of the plaintiff to shut off the water. In discharging this duty plaintiff dropped his shovel, stepped to the place opposite the faucet, and then forward to reach it. In doing so he thrust his foot into an opening caused by the solid covering being lifted by the ore which had clogged in the conveyor underneath. His foot was caught in the conveyor and thereby mangled, causing the injuries for which he sued.

The solid lid and the grating over the conveyor were held in place by their weight only. The contact of the water with the hot ore caused steam, which prevented the plaintiff, as the jury found, from seeing that the lid was lifted. He had worked at the smelter sixteen days, and about two days in this room. The negligence charged was:

"That the said defendant permitted the conveyor and long screw, which carried the crushed ore which plaintiff was shoveling into said conveyor, to become defective and out of repair to such an extent that it failed to carry the crushed ore through said conveyor, as it was intended to do and should have done, in that it became gorged at the time the plaintiff was injured to such an extent that the gorged ore lifted up the covering that should have protected plaintiff from stepping into said conveyor and pushed back said covering so as to obstruct and cause plaintiff's foot to go into the conveyor and upon the screw, as hereinbefore described; that had said conveyor and the screw that covered said crushed ore been in proper repair it should have carried the crushed ore without lifting up the covering of said conveyor."

The foreman in charge of the "mix department" testified:

"During December, or before December 9, 1905, I

noticed a defect with the conveyor and notified the company; it was worn at the end and would n't carry the ore fast enough; it would clog and would raise these up [meaning the pan and grate] and made it dangerous. I notified the machinist and yard foreman and Mr. Milton, I think, two weeks before December 9. I don't believe a man working where Streets was could turn the water on or off without stepping on this conveyor—on the grate or on the pan, because it is too far a distance. . . . The conveyor being defective or worn, if the ore accumulated it would raise the pan up —give it a chance to raise up and slide apart."

This witness also testified that the steam would obscure the opening of the covering at that point.

The jury found the facts as stated above, and also that the plaintiff could not reach the faucet without stepping upon or across the conveyor, and that the condition of the conveyor caused it to become clogged without being overfed, which condition the plaintiff could not see because of the steam.

The defendant requested the following instruction, which was refused:

"If you believe from all the evidence in the cause that the plaintiff knew the location of the conveyor in question and its immediate surroundings, and by the use of ordinary care could have stepped over and across said conveyor without stepping into the same, but failed to do so, then your verdict should be for the defendant."

Among the instructions given were the following:

"(7) I have instructed you that the servant, or employee, assumes the usual and ordinary risks incident to his employment. And on that head I further instruct you that the servant, or employee, must use ordinary care and prudence for the discovery of defective or dangerous places or dangerous machinery at or about which he may be employed, and which are likely to cause him injury; and if he fails to use ordinary care and prudence in this regard and injury results to him he can not recover damages, and that without regard to the fact that the corporation may have been negligent also.

"(8) Should you find from the evidence in this case

Cockerill v. Streets.

that the plaintiff was injured by reason of the alleged defective conveyor, and that he used ordinary care and prudence *when he stepped over to shut off the water,* then, and in that event, your verdict should be for the plaintiff.

"(9) Should you find from the evidence that the plaintiff failed to exercise ordinary care and prudence *at the time he stepped over to shut off the water,* and that by reason of his failing to exercise ordinary care and prudence he was injured, then, and in that event, you should return a general verdict for the defendant."

The defendant contends that by refusing its request, and by including in the charge given the words which we have italicised, the court failed to state, as it should have done, that it was the duty of the plaintiff to exercise ordinary care to discover the defect *before* the injury, and refers to *U. P. Rly. Co. v. Monden,* 50 Kan. 539, 31 Pac. 1002, as authority for this contention. In that case the negligence complained of was the absence of a junction-marker. The deceased conductor had taken his train past the junction in going out upon the trip and was killed on the return trip. The court, in stating to the jury the duty that rested upon the deceased, directed them to find whether *"previous to going out upon that trip . . . [he]* had knowledge that there were no such marks or signs" (p. 547), thus excluding from the inquiry the knowledge that he might have gained in going out upon the same trip. There was no such limitation in the charge in this case. The court first gave full instructions concerning the assumption of risk by the plaintiff, and in that connection his duty to use care to discover defects, informing the jury that if he had not done so he could not recover. (Inst. No. 7, *supra.*) Then in proper sequence their attention was called to his duty to exercise proper care at the time the injury occurred. The jury found, in answer to question No. 23, that the plaintiff could not by the exercise of ordinary care and prudence have discovered the faulty conditions before the injury.

There was no error in refusing the second request of the defendant to require the jury to answer question No. 24 more fully. When the answers were first returned the court did require a more definite answer, but they returned with the statement that they had answered it according to the best of their ability. The question and answer were:

"(24) Ques. If you answer the next preceding question in the negative, then state fully why he could not have discovered or known the condition of said conveyor? Ans. Never had been warned of the conditions and danger thereof."

In answer to other questions the jury found that the plaintiff did not know that the ore would become clogged so as to raise the lid; that he could not by the exercise of ordinary care have discovered or known this condition before the injury; and that the steam prevented him from seeing or knowing the conditions at the time he was hurt. It is not perceived how the jury could have answered more definitely than they did without repeating other findings. Considering all the findings together, they were sufficiently definite. The general verdict and findings together establish the defendant's negligence, and negative the claim of contributory negligence by the plaintiff.

The judgment is affirmed.